IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

WISCONSIN LABORERS HEALTH FUND,
WISCONSIN LABORERS PENSION FUND,
WISCONSIN LABORERS APPRENTICESHIP
AND TRAINING FUND,
WISCONSIN LABORERS-EMPLOYERS
COOPERATION AND EDUCATION TRUST FUND,                **FINDINGS OF FACT AND**
and                                                 **CONCLUSIONS OF LAW**
JOHN J. SCHMITT,

                                    Plaintiffs,        16-cv-611-jdp

            v.

BOB EWERS CONTRACTING, LLC,

                                    Defendant.
_____

Plaintiffs are fringe benefit plans affiliated with a union (Wisconsin Laborers District Council) and a trustee of those plans. Plaintiffs seek to enforce the union's collective bargaining agreement (CBA) against defendant Bob Ewers Contracting, LLC. Plaintiffs contend that under the CBA certain categories of work should have been reserved for members of the bargaining unit, but Bob Ewers Contracting did the work with family members who were not members of the laborers union. Plaintiffs bring this case under the Employee Retirement Income Security Act of 1974 (ERISA) and the Labor Management Relations Act of 1947 (LMRA) seeking to recover amounts owed to the fringe benefit plans.

On plaintiffs' motion for summary judgment, the court held that Bob Ewers Contracting had breached the CBA. Dkt. 50. (The background to the case is set out in the court's summary judgment order, so it won't be repeated here.) The court held that Bob Ewers Contracting was liable for fringe benefits on (1) all hours that Dale Ewers and Dean Ewers worked on covered projects, regardless of whether the work was laborer work; and (2) any hours that Bob Ewers

spent on laborer work. The amount damages was to be resolved at a bench trial, which the court held on November 16, 2017. Both sides filed post-trial briefs. Dkt. 56 and Dkt. 58. Based on the evidence at trial, the parties post-trial submissions, and all filings in the case, the court sets out here its findings of fact and conclusions of law.

## A. Covered projects

The parties debate one issue related to liability that they did not raise at summary judgment: which projects are covered by the CPA. Bob Ewers Contracting does some private work that all agree is not covered by the CBA; the parties dispute which of the public projects are covered. The potentially covered projects fall into three categories.

### 1. Municipal sewer and water projects

Plaintiffs contend that Bob Ewers Contracting owes contributions for work on three municipal sewer and water projects: Jefferson Street; Baltimore Street; and 11th/3rd Street. (In post-trial briefing, plaintiffs withdrew their request for contributions for work on the Muscoda Library project.) Plaintiffs also contend that the matter was resolved by a concession before trial.

#### a. Waiver

Bob Ewers Contracting submitted proposed facts in preparation for trial, including two related to the covered project question:

> 19. Only work performed on heavy and highway projects and municipal sewer and water work is covered under the Laborers' Collective Bargaining Agreement.

> 20. Private work such as basements, septic systems, and private roads are not covered work under the Laborers' Collective Bargaining Agreement.

Dkt. 30. Plaintiffs took this to be a concession that all of Bob Ewers Contracting's municipal sewer and water work would be covered under the CBA. About three weeks before trial, they notified the court accordingly:

> The Plaintiffs are therefore modifying the nature of the summary judgment on liability that they request for the Court to enter: The Court should find that Bob Ewers Contracting must contribute to the Plaintiff Funds for all hours worked by Dale Ewers and Dean Ewers on either heavy & highway, or municipal sewer and water projects, leaving for trial only the following damages issues: (a) The amount of either heavy & highway, or municipal sewer and water projects worked on by Bob Ewers Contracting during the time period of October of 2011 through June of 2016; and (b) the amount of covered work that Bob Ewers Contracting assigned to Bob Ewers.

Dkt. 43, at 2.

Just before trial, however, Bob Ewers Contracting attempted to qualify its proposed facts, contending that only projects contracted by or supervised by the Wisconsin Department of Transportation are covered by the CBA. Plaintiffs objected on the ground that Bob Ewers Contracting's last-minute change of heart deprived plaintiffs of the opportunity to present evidence that all the municipal sewer and water work would be covered under the CBA. The court expressed sympathy to plaintiffs' objection at trial, because plaintiffs had apparently relied on Bob Ewers Contracting proposed facts in preparing for trial. But the court told the parties that the court would hear the evidence and decide the concession issue after trial.

Now, with the benefit of the parties' post-trial briefs, the court will not deem the matter to have been conceded by Bob Ewers Contracting. The question turns on the interpretation of the CBA, and the parties had a fair opportunity to brief the issue after trial. Plaintiffs' argument on the point relies primarily on their interpretation of Article IV of the CBA in light of Wisconsin statutes and administrative regulations. Dkt. 56, at 5–8. Because they don't rely on

any evidence that might have been presented at trial, they cannot show any significant prejudice from Bob Ewers Contracting's last-minute clarification of its position. Whether all municipal sewer and water projects are covered by the CBA is appropriately resolved by the court as a matter of law based on the plain language of the CBA.

### b. Merits

Plaintiffs argue that based on Article IV, the CBA covers any laborer work on highways, regardless whether it is contracted by, or under supervision of, the Wisconsin DOT. And under Wisconsin statutes, "highway" includes any public road. Wis. Stat. § 340.01(22). So, according to plaintiffs, sewer and water work is covered by the CBA so long as it performed adjacent to a road, regardless of any Wisconsin DOT involvement.

The decisive provision is not Article IV, but Article I, which expressly addresses the scope of the CBA:

Coverage

> This agreement shall cover all highway and heavy construction work included in contracts awarded by the State of Wisconsin Department of Transportation, all work performed for any authority supervised by said Department of Transportation, [and] airport work (exclusive of buildings).

Dkt. 14-5, at 4. Airport work is not at issue in this case. Based on the Coverage provision of the CBA, the CBA covers work under contracts that are awarded by the Wisconsin DOT, or work that is for any authority supervised by the Wisconsin DOT.

The court rejects plaintiffs' proposed interpretation of the CBA because it simply disregards that plain language of the coverage provision in Article I. Article IV defines what work falls within the jurisdiction of the laborers union, as opposed to other unions. But Article IV does not establish what projects are covered by the CBA.

At trial, plaintiffs attempted to elicit testimony to establish that some projects were somehow supervised or otherwise connected to the Wisconsin DOT. But that testimony failed to establish any meaningful connection to the Wisconsin DOT, and plaintiffs do not mention it in their post-trial briefs. The court concludes that municipal sewer and water projects are not covered by the CBA, and that Bob Ewers Contracting does not owe any contribution for work on those projects.

## 2. Local road projects

Plaintiffs contend that two local road construction projects are covered by the CBA: the Avoca and Clyde OP projects. Plaintiffs ask the court to take judicial notice that these projects were funded through the Wisconsin's Local Roads Improvement Program (LRIP), and that under the applicable state regulations, they qualify as "work performed for any authority supervised by [the] Department of Transportation." Dkt. 56, at 11–13. Thus, plaintiffs' argument goes, these projects are within the scope of the coverage provision in Article I of the CBA.

The court is persuaded by Bob Ewers Contracting's counterargument that the LRIP is merely a funding mechanism that does not entail DOT supervision. Dkt. 58, at 3–5. Chapter TRANS 206 of the Wisconsin Administrative Code addresses Wisconsin's LRIP. Both sides point to Wis. Admin. Code TRANS 206.03 as the pertinent section. Plaintiffs contend that under § 206.03(12) and (13) the Wisconsin DOT is required to enforce the LRIP contract with the local unit of government, and that means that LRIP projects are under Wisconsin DOT supervision. But nothing in § 206.03 actually requires Wisconsin DOT supervision. As Bob Ewers Contracting points out, § 206.03(5) expressly states that LRIP is a reimbursement program. Section 206.03(10) states that the unit of local government is responsible for contract

administration. Section 206.03(15) sets out the duties of the Wisconsin DOT, which include "Determine if proposed projects meet the criteria of this chapter." But nothing in § 206.03(15) charges the Wisconsin DOT any duty to supervise the project.

Plaintiffs did not present evidence at trial that Wisconsin DOT actually supervised either the Avoca or Clyde projects. And Bob Ewers testified that he was not aware of any Wisconsin DOT supervision of those projects. The court concludes that these two local road projects were not undertaken for any authority that was supervised by the Wisconsin DOT, and thus they do not fall within the scope of the CBA. Bob Ewers Contracting does not owe any contribution to plaintiffs for these two projects.

### 3. Wisconsin DOT projects

So that leaves work on projects under contracts that were actually awarded by the Wisconsin DOT. Plaintiffs contend that there are ten such projects. In its post-trial brief, Bob Ewers Contracting concedes that these ten projects are covered by the CBA. Accordingly, Bob Ewers Contracting owes contributions for the ten projects listed on Dkt. 59-2 (Pls.' Tr. Ex. 8).

## B. Compensation for work under the CBA

### 1. Hours worked

Contributions owed to plaintiffs depend on the hours worked. For reasons explained in the court's summary judgment order, Bob Ewers Contracting owes plaintiffs for all hours worked by Dale and Dean Ewers on the ten Wisconsin DOT projects. In brief, Dale and Dean meet the definition of "laborer" under the CBA, so Bob Ewers Contracting owes a contribution for all their hours, even though some of those hours were spent on non-laborer work. The parties agree that the hours are tabulated on Dkt. 59-2. Dale Ewers worked 1625.50 hours,

and Dean Ewers worked 1665 hours, and Bob Ewers Contracting owes contributions for all these hours.

At summary judgment, the court also held that Bob Ewers Contracting breached the CBA by having Bob Ewers perform some work that should have been done by members of the bargaining unit. But Bob Ewers is the owner of the company, not an employee, so he does not meet the definition of "laborer" under the CBA. So the court held that plaintiffs are entitled to fringe benefit contributions only for the actual hours that Bob Ewers spent on laborer work.

Plaintiffs do not have to establish how many hours Bob Ewers spent on laborer work with mathematical precision. But they have to establish an evidentiary basis to make a reasonable estimate. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) (when employer fails to keep time records, plaintiff may prove hours worked through "just and reasonable inference").

Plaintiffs contend that the court should use as an estimate the hours worked by Bob Ewers's grandson, Kevin Ewers, because he worked the "fewest hours" on the DOT projects and it is reasonable to infer that Bob Ewers worked at least as many hours as a laborer. Dkt. 56, at 16. In the alternative, plaintiffs contend that "whenever Bob Ewers Contracting did lay pipe, Bob Ewers would be one of the two employees involved in performing said work" and they propose that the court attribute to Bob Ewers one-half hour of laborer work per day. *Id.* at 17–18. Plaintiffs cite no evidence in support of either theory, and the court finds neither of these theories provide a reasonable basis to estimate the hours Bob Ewers spend on laborer work.

At trial, Bob Ewers testified that he was 80 years old and that he generally relies on younger members of his family for physical tasks. The court noted that Bob Ewers is in

surprisingly good physical condition, and he admitted that he sometimes did physical labor that would be within the jurisdiction of the laborers union. But neither side presented any evidence from which the court could calculate a reasonable estimate of the number of hours Ewers spent doing that type of work.

The bottom line is that Bob Ewers Contracting owes to plaintiffs fringe benefit contributions for all hours worked by Dale and Dean Ewers on the ten Wisconsin DOT projects. But because plaintiffs failed to provide a reasonable estimate of the physical labor that Bob Ewers performed, the court cannot award damages based on Ewers's work.

### 2. Rates, interest, and liquidated damages

The rate of fringe benefit contribution for each hour of laborer work varies depending on when the work was performed. The parties agree that from June 2012 to May 2013, the contribution rate is $13.90 per hour; from June 2013 to May 2014, the rate is $14.63; from June 2014 to May 2015, the rate is $15.14; and from June 2015 to May 2016, the rate is $15.65.

The parties also agree that 20 percent liquidated damages should be assessed to the contributions owed, and that simple annual interest of 18 percent applies to the overdue contributions. Plaintiffs have calculated interest from the month when the work was performed through October 2017, just before trial. Plaintiff's approach is reasonable; Bob Ewers Contracting does not object; the court will adopt plaintiff's approach.

### C. Attorney fees and costs

The parties agree that plaintiffs are entitled to attorney fees and costs. They also agree that the 135 hours that plaintiffs' counsel spent litigating this case and the total cost of $508.20 are reasonable. They dispute the hourly rate that should be awarded.

Plaintiffs' counsel contends that he is entitled to an hourly rate of $250 because that is the amount "similar legal services would fetch." Dkt. 56, at 22. But "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay him." *Assessment Techs. of Wis., LLC v. WIREdata, Inc.*, 361 F.3d 434, 438 (7th Cir. 2004). Plaintiffs agreed to pay their counsel $180 per hour, Dkt. 57, ¶ 7, so that is the hourly rate the court will apply here. The court will award plaintiffs their reasonable actual attorney fees in the amount of $24,300 and costs in the amount of $508.20.

CONCLUSION

In sum, the court concludes that plaintiffs are entitled to fringe benefit contributions in the amount of $49,057.75; liquidated damages in the amount of $9,811.55; and interest through October 31, 2017, in the amount of $30,698.70. A chart showing the tabulation of these amounts is attached as an Appendix to this opinion and order. Plaintiffs are also entitled to attorney fees in the amount of $24,300 and costs in the amount of $508.20. The total award is therefore $114,376.20.

IT IS ORDERED that plaintiffs are entitled to judgment in the amount of $114,376.20.

Entered August 21, 2018.

BY THE COURT:
/s/

_____

JAMES D. PETERSON
District Judge

**Wisconsin Laborers Health Fund, et al. v. Bob Ewers Contracting, LLC**
**Case No. 16-cv-611**
**Damages tabulation**

| Project Name | Week beginning | Week ending | Dale Ewers Hours | Dean Ewers Hours | Contribution Rate | Contribution Amount | Liquidated Damages | Interest |
|---|---|---|---|---|---|---|---|---|
| Boaz/14 OP | December 1, 2012 | December 7, 2012 | 32 | 32 | 13.90 | 889.60 | 177.92 | 798.42 |
| Boaz/14 OP | June 17, 2013 | June 23, 2013 | 14 | 14 | 14.63 | 409.64 | 81.93 | 327.10 |
| Boaz/14 OP | July 8, 2013 | July 14, 2013 | 16 | 16 | 14.63 | 468.16 | 93.63 | 368.91 |
| Boaz/14 OP | July 15, 2013 | July 21, 2013 | 8 | 8 | 14.63 | 234.08 | 46.82 | 183.64 |
| Boaz/14 OP | July 22, 2013 | July 28, 2013 | 40 | 40 | 14.63 | 1,170.40 | 234.08 | 914.08 |
| Boaz/14 OP | August 5, 2013 | August 11, 2013 | 32 | 32 | 14.63 | 936.32 | 187.26 | 724.71 |
| Boaz/14 OP | August 12, 2013 | August 18, 2013 | 40 | 40 | 14.63 | 1,170.40 | 234.08 | 901.79 |
| Boaz/14 OP | August 19, 2013 | August 25, 2013 | 40 | 40 | 14.63 | 1,170.40 | 234.08 | 897.70 |
| Boaz/14 OP | August 26, 2013 | September 1, 2013 | 40 | 40 | 14.63 | 1,170.40 | 234.08 | 893.60 |
| Boaz/14 OP | September 2, 2013 | September 8, 2013 | 32 | 32 | 14.63 | 936.32 | 187.26 | 711.60 |
| Boaz/14 OP | September 9, 2013 | September 15, 2013 | 40 | 40 | 14.63 | 1,170.40 | 234.08 | 885.41 |
| Boaz/14 OP | September 16, 2013 | September 22, 2013 | 24 | 24 | 14.63 | 702.24 | 140.45 | 528.79 |
| Boaz/14 OP | September 23, 2013 | September 29, 2013 | 16 | 16 | 14.63 | 468.16 | 93.63 | 350.89 |
| Boaz/14 OP | October 7, 2013 | October 13, 2013 | 32 | 32 | 14.63 | 936.32 | 187.26 | 695.22 |
| Boaz/14 OP | October 14, 2013 | October 20, 2013 | 40 | 40 | 14.63 | 1,170.40 | 234.08 | 864.93 |
| Boaz/14 OP | November 11, 2013 | November 17, 2013 | 4 | 4 | 14.63 | 117.04 | 23.41 | 84.85 |
| Boaz/14 OP | May 26, 2014 | June 1, 2014 | 12 | 12 | 14.63 | 351.12 | 70.22 | 220.15 |
| Boaz/14 OP | July 29, 2014 | August 5, 2013 | 40 | 40 | 15.14 | 1,211.20 | 242.24 | 720.66 |
| Boaz/14 OP | August 25, 2014 | August 31, 2014 | 6.5 | 6.5 | 15.14 | 196.82 | 39.36 | 114.45 |
| Boaz/14 OP | September 1, 2014 | September 7, 2014 | 6.5 | 6.5 | 15.14 | 196.82 | 39.36 | 113.76 |
| Boaz/14 UP | October 21, 2013 | October 27, 2013 | 40 | 40 | 14.63 | 1,170.40 | 234.08 | 860.83 |
| Bridge OP | August 18, 2014 | August 24, 2014 | 26 | 26 | 15.14 | 787.28 | 157.46 | 460.56 |
| Bridge OP | August 25, 2014 | August 31, 2014 | 9 | 9 | 15.14 | 272.52 | 54.50 | 158.47 |
| Bridge OP | September 1, 2014 | September 7, 2014 | 9 | 9 | 15.14 | 272.52 | 54.50 | 157.52 |
| Bridge OP | October 20, 2014 | October 26, 2014 | 28 | 28 | 15.14 | 847.84 | 169.57 | 469.28 |
| Bridge Op | October 27, 2014 | November 2, 2014 | 40 | 40 | 15.14 | 1,211.20 | 242.24 | 666.16 |
| Bridge OP | November 3, 2014 | November 9, 2014 | 16 | 16 | 15.14 | 484.48 | 96.90 | 264.77 |
| Cobb/Avoca | September 15, 2014 | September 21, 2014 | 18 | 18 | 15.14 | 545.04 | 109.01 | 311.22 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Cty B/Bridge OP | August 4, 2014 | August 10, 2014 | 6 | 6 | 15.14 | 181.68 | 36.34 | 107.55 |
| Cty B/Bridge OP | August 11, 2014 | August 17, 2014 | 7 | 7 | 15.14 | 211.96 | 42.39 | 124.74 |
| Cty B/Bridge OP | August 18, 2014 | August 24, 2014 | 7 | 7 | 15.14 | 211.96 | 42.39 | 124.00 |
| Cty B/Bridge OP | August 25, 2014 | August 31, 2014 | 5.5 | 5.5 | 15.14 | 166.54 | 33.31 | 96.84 |
| Cty B/Bridge OP | September 1, 2014 | September 7, 2014 | 6.5 | 6.5 | 15.14 | 196.82 | 39.36 | 113.76 |
| Cty F OP | August 31, 2015 | September 6, 2015 | 0 | 27 | 15.65 | 422.55 | 84.51 | 167.33 |
| Cty F OP | September 7, 2015 | September 13, 2015 | 0 | 6 | 15.65 | 93.90 | 18.78 | 36.86 |
| Cty F OP | October 4, 2015 | October 10, 2015 | 23 | 23 | 15.65 | 719.90 | 143.98 | 272.84 |
| Cty F OP | October 11, 2015 | October 17, 2015 | 13 | 13 | 15.65 | 406.90 | 81.38 | 152.79 |
| Cty F OP | November 8, 2015 | November 14, 2015 | 3 | 3 | 15.65 | 93.90 | 18.78 | 33.94 |
| Cty FOP | September 14, 2015 | September 20, 2015 | 5 | 5 | 15.65 | 156.50 | 31.30 | 60.88 |
| Cty FOP | September 21, 2015 | September 27, 2015 | 0 | 6 | 15.65 | 93.90 | 18.78 | 36.20 |
| Cty FOP | September 28, 2015 | October 3, 2015 | 0 | 6 | 15.65 | 93.90 | 18.78 | 35.87 |
| Cty FOP | October 18, 2015 | October 24, 2015 | 8 | 10 | 15.65 | 281.70 | 56.34 | 104.79 |
| Cty FOP | October 25, 2015 | October 31, 2015 | 3 | 3 | 15.65 | 93.90 | 18.78 | 34.60 |
| Min. Pt/S.G. OP | April 20, 2015 | April 26, 2015 | 26 | 26 | 15.14 | 787.28 | 157.46 | 364.12 |
| Min. Pt/S.G. OP | April 27, 2015 | May 3, 2015 | 10 | 10 | 15.14 | 302.80 | 60.56 | 138.99 |
| Min. Pt/S.G. OP | May 4, 2015 | May 10, 2015 | 11.5 | 9 | 15.14 | 310.37 | 62.07 | 141.37 |
| Min. Pt/S.G. OP | May 11, 2015 | May 17, 2015 | 35 | 30 | 15.14 | 984.10 | 196.82 | 444.81 |
| Min. Pt/S.G. OP | May 18, 2015 | May 24, 2015 | 8 | 13 | 15.14 | 317.94 | 63.59 | 142.60 |
| Min. Pt/S.G. OP | June 1, 2015 | June 7, 2015 | 30 | 25 | 15.65 | 860.75 | 172.15 | 380.02 |
| Min. Pt/S.G. OP | June 8, 2015 | June 14, 2015 | 3.5 | 0 | 15.65 | 54.78 | 10.96 | 23.99 |
| Min. Pt/S.G. OP | June 15, 2015 | June 21, 2015 | 4 | 0 | 15.65 | 62.60 | 12.52 | 27.20 |
| S.G. OP | June 15, 2014 | June 22, 2014 | 10 | 10 | 15.14 | 302.80 | 60.56 | 186.83 |
| S.G. OP | September 15, 2014 | September 21, 2014 | 8 | 8 | 15.14 | 242.24 | 48.45 | 138.32 |
| S.G. OP | September 22, 2014 | September 28, 2014 | 45 | 45 | 15.14 | 1,362.60 | 272.52 | 773.28 |
| S.G. OP | September 29, 2014 | October 5, 2014 | 39 | 39 | 15.14 | 1,180.92 | 236.18 | 666.04 |
| S.G. OP | October 6, 2014 | October 12, 2014 | 43 | 43 | 15.14 | 1,302.04 | 260.41 | 729.79 |
| S.G. OP | October 13, 2014 | October 19, 2014 | 36 | 36 | 15.14 | 1,090.08 | 218.02 | 607.17 |
| S.G. OP | October 20, 2014 | October 26, 2014 | 21 | 21 | 15.14 | 635.88 | 127.18 | 351.96 |
| S.G. OP | October 27, 2014 | November 2, 2014 | 10 | 10 | 15.14 | 302.80 | 60.56 | 166.54 |
| S.G. OP | March 28, 2015 | April 4, 2015 | 8 | 8 | 15.14 | 242.24 | 48.45 | 114.82 |
| S.G. OP | April 5, 2015 | April 11, 2015 | 57 | 57 | 15.14 | 1,725.96 | 345.19 | 811.20 |
| S.G. OP | April 12, 2015 | April 18, 2015 | 59 | 59 | 15.14 | 1,786.52 | 357.30 | 833.41 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| S.G. OP | May 4, 2015 | May 10, 2015 | 12.5 | 5.5 | 15.14 | 272.52 | 54.50 | 124.13 |
| S.G. OP | May 18, 2015 | May 24, 2015 | 4 | 0 | 15.14 | 60.56 | 12.11 | 27.16 |
| S.G. OP | August 31, 2015 | September 6, 2015 | 0 | 4.5 | 15.65 | 70.43 | 14.09 | 27.89 |
| Tuckaway OP | June 24, 2013 | June 30, 2013 | 25 | 25 | 14.63 | 731.50 | 146.30 | 581.54 |
| Tuckaway OP | July 1, 2013 | July 7, 2013 | 13 | 13 | 14.63 | 380.38 | 76.08 | 301.07 |
| US Hwy 14 OP | May 13, 2013 | May 19, 2013 | 34 | 34 | 13.90 | 945.20 | 189.04 | 771.28 |
| US Hwy 14 OP | May 20, 2013 | May 26, 2013 | 34 | 34 | 13.90 | 945.20 | 189.04 | 767.98 |
| US Hwy 14 OP | May 27, 2013 | June 2, 2013 | 31 | 31 | 13.90 | 861.80 | 172.36 | 697.20 |
| US Hwy 14 OP | June 3, 2013 | June 9, 2013 | 40 | 40 | 14.63 | 1,170.40 | 234.08 | 942.76 |
| US Hwy 14 OP | June 10, 2013 | June 16, 2013 | 40 | 40 | 14.63 | 1,170.40 | 234.08 | 938.66 |
| US Hwy 14 OP | June 17, 2013 | June 23, 2013 | 15 | 15 | 14.63 | 438.90 | 87.78 | 350.46 |
| US Hwy 14 OP | July 8, 2013 | July 14, 2013 | 18 | 18 | 14.63 | 526.68 | 105.34 | 415.02 |
| US Hwy 14 OP | July 15, 2013 | July 21, 2013 | 16 | 16 | 14.63 | 468.16 | 93.63 | 367.27 |
| W.C OP | October 4, 2015 | October 10, 2015 | 2 | 2 | 15.65 | 62.60 | 12.52 | 23.73 |
| W.C. OP | August 2, 2015 | August 8, 2015 | 0 | 8 | 15.65 | 125.20 | 25.04 | 51.39 |
| W.C. OP | August 9, 2015 | August 15, 2015 | 8 | 9 | 15.65 | 266.05 | 53.21 | 108.28 |
| W.C. OP | September 7, 2015 | September 13, 2015 | 0 | 5 | 15.65 | 78.25 | 15.65 | 30.71 |
| W.C. OP | September 14, 2015 | September 20, 2015 | 24 | 24 | 15.65 | 751.20 | 150.24 | 292.22 |
| W.C. OP | September 21, 2015 | September 27, 2015 | 32 | 32 | 15.65 | 1,001.60 | 200.32 | 386.12 |
| W.C. OP | September 28, 2015 | October 3, 2015 | 25 | 25 | 15.65 | 782.50 | 156.50 | 298.92 |
| Total | | | 1625.5 | 1665 | | **$49,057.75** | **$9,811.55** | **$30,698.70** |